UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Michael R. MAHONEY, | Civ. No. 2:13-7685 (KM) |
| Plaintiff, | |
| | OPINION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Michael R. Mahoney, who is currently receiving DIB and SSI benefits, brings this action pursuant to 5 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title XVI Supplemental Security Income ("SSI") for the period November 22, 2002, through November 30, 2009. Mahoney alleges that he was unable to engage in substantial gainful activity because he suffered from uncontrolled diabetes, complications from his diabetes, cervical and lumbar disc disease, and post-concussion syndrome. (Pl. Br.[1] 3–4, ECF No. 15) For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I.  **BACKGROUND**

On this appeal, Mahoney seeks to reverse an ALJ's finding that he was not disabled from November 22, 2002 through November 30, 2009. (R.[2] 340, ECF No. 7) The road to that finding was a long one.

---

[1]   This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

[2]   "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 7).

1

Mahoney initially applied for SSI benefits on November 22, 2002. (*Id.*) Administrative Law Judge ("ALJ") Muehlig denied benefits. The Appeals Council affirmed that decision. The Honorable Dennis M. Cavanaugh of this district remanded the case for further administrative proceedings. (*See Mahoney v. Commissioner of Social Security*, Civ. No. 06-4861 (DMC), ECF No. 7 (Consent Order to Remand))

Pursuant to Judge Cavanaugh's remand, on April 11, 2008, an ALJ issued a further decision. The Appeals Council remanded the case to the ALJ on January 14, 2010. The ALJ issued yet another decision on August 17, 2010.

On April 25, 2012, the Appeals Council took jurisdiction of Mahoney's case. On July 5, 2012, The Appeals Council determined that Mahoney was disabled as of December 1, 2009, based on the Medical-Vocational Rule 201.14 of Table No. 1, Appendix 2, Subpart P, 20 C.F.R. § 404.[3] The Appeals Council also remanded the case to Administrative Law Judge Hilton R. Miller for a determination of whether Mahoney was disabled, and therefore entitled to benefits, for the period prior to December 1, 2009.

On August 21, 2012, ALJ Miller held a hearing pursuant to the Appeals Council's remand order. Mahoney was represented by counsel and testified at that hearing. ALJ Miller then determined in an October 4,

---

[3] The significance of December 1, 2009, is that it was Mahoney's 50th birthday. To simplify a bit, the threshold for entitlement to benefits is somewhat lower for an applicant who has attained the age of 50. As of that date, as the Appeals Council noted, Mahoney had "attained age closely approaching advanced age" within the meaning of Medical-Vocational Rule 201.14 of Table No., Appendix 2, Subpart P, 20 CFR Part 404. That Rule, the Appeals Council held, compels a finding that "a person with [Mahoney's] high school education and semi-skilled work experience who is limited to unskilled sedentary work is disabled as of attainment of age closely approaching advanced age." (*Id.*) *See also* 20 C.F.R. § 416.963(b) ("Younger person" defined as one under age 50); 20 C.F.R. § 416.963(d) ("Person closely approaching advanced age" defined as one aged 50 to 54); 20 C.F.R. § 416.963(e) ("Person of advanced age" defined as one 55 or older).

2012 opinion that Mahoney was not disabled from November 22, 2002 through November 30, 2009. On November 8, 2013, the Appeals Council denied Mahoney's appeal from ALJ Miller's October 4, 2012 decision, rendering it the "final decision" of the Commissioner. Mahoney now appeals that decision to this Court.

To clarify, Mahoney is currently receiving SSI benefits as a result of the Appeals Council's determination that he has been disabled since December 1, 2009. The issue now before the Court is whether Mahoney was also disabled from November 22, 2002 through November 30, 2009 (the "relevant period").

## II. DISCUSSION

To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

### a. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

### b. The Appeals Council's Order

The Appeals Council remand that led to the decision now on appeal directed the ALJ to do the following:

- If necessary, obtain supplemental evidence from a medical expert to clarify the nature, course and severity of the claimant's impairments and the functional limitations arising from them (20 C.F.R. § 416.927(f) and Social Security Ruling 96-6p).

- Give further consideration to the claimant's maximum residual functional capacity during the period at issue and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. § 416.945 and Social Security Ruling 96-8p).

- Give further consideration to the treating source opinions, pursuant to the provisions of 20 C.F.R. § 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or clarification of the opinions and may obtain additional medical source statement[s] about what the claimant could still do despite the impairments through November 30, 2009 (20 C.F.R. § 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. § 416.929 and Social Security Ruling 96-7p).

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity and limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. § 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and it companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(R. 396)

### c. The ALJ's decision

On remand, the ALJ concluded that from November 22, 2002, through November 30, 2009, Mahoney was not disabled. His determinations may be summarized as follows.

At step one, the ALJ determined that Mahoney had not engaged in substantial gainful activity since November 22, 2002, his alleged disability onset date. (R. 342)

At step two, the ALJ found that Mahoney had suffered from the following severe impairments since November 22, 2002: "insulin dependent diabetes mellitus; mild sensory peripheral neuropathy; diabetic retinopathy; cervical spine disc bulge and protrusion with radiculopathy." (*Id.*)

At step three, the ALJ determined that none of Mahoney's impairments or combinations of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.* 343)

At step four, the ALJ found that since November 22, 2002, Mahoney "has had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that he is also limited to unskilled and entry level work that is simple and routine; only occasional overhead reaching; frequent fine and gross manipulation; no operation of foot controls or foot pedals; must avoid concentration exposure to fumes, dusts, odors, gases, poor ventilation, temperature extremes, and other respiratory irritants; and is limited to ambulation and walking with a cane." (R. 343) Based on this residual functional capacity ("RFC"), the ALJ found that Mahoney was not able to perform any past relevant work since November 22, 2002. (*Id.* 347) The ALJ found that Mahoney "has at least a high school education and is able to communicate in English." (*Id.*) Finally, the ALJ found that the "[t]ransferability of job skills is not an

issue in this case because [Mahoney's] past relevant work is unskilled." (*Id.*)

The ALJ noted that Mahoney was born on December 1, 1959, and was 42 years old at the time of his first application. That put him in the 18-44 age range, and defined him (at the time) as a "younger person" under 20 C.F.R. § 416.963(c). (*Id.; see also* n.3, *supra.*)

At step five, the ALJ determined that, "[p]rior to December 1, 2009, the date [Mahoney's] age category changed, considering [Mahoney's age], education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.*) As noted above, such a finding at step five requires that benefits be denied.

### d. Mahoney's appeal

Mahoney argues that the Commissioner's decision is not supported by substantial evidence. Specifically, Mahoney argues that the ALJ (1) improperly rejected treating physician opinions; (2) failed to consider Mahoney's subjective complaints of pain and other symptoms; and (3) posed an improper hypothetical question to the vocational expert. (Pl. Br. 16–26 (Plaintiff's Points B, D, and C, respectively))

### e. Analysis

#### i. *The ALJ properly considered the opinions of Mahoney's treating physicians (Plaintiff's Point B)*

Mahoney argues that the ALJ rejected all of his treating physicians' opinions even though their opinions were uncontroverted. (Pl. Br. 16–21) Specifically, Mahoney argues that the ALJ gave insufficient weight to the opinions of Dr. Fogari, Mahoney's treating endocrinologist; Dr. Hamada, Mahoney's treating orthopedist; and Dr. Hoffman, a consultative examiner. Mahoney also argues that the ALJ relied too heavily on the opinion of Dr. Drice, a state agency physician. I find that the ALJ

properly considered the medical opinions in this case, and that his findings are supported by substantial evidence.

An ALJ is free to credit one medical opinion over another, provided that the ALJ considers all of the evidence and gives reasons for discounting the evidence he or she rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted) (An ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

In this case, the ALJ considered all of the available medical evidence in determining Mahoney's residual functional capacity. The ALJ gave sufficient reasons for discounting certain portions of medical opinions. As evidenced by the RFC assessment, the ALJ did not wholly disregard any of the opinions. Specifically, he found that Mahoney was limited to performing only "sedentary work as defined in 20 C.F.R. § 416.967(a)," and that any such work is further "limited to unskilled and entry level work that is simple and routine" and involves "only occasional overhead reaching; frequent fine and gross manipulation; no operation of foot controls or foot pedals." (R. 343) The ALJ also found that Mahoney "must avoid concentration exposure to fumes, dusts, odors, gases, poor ventilation, temperature extremes, and other respiratory irritants; and is limited to ambulation and walking with a cane." (*Id.*) Those limitations, though ultimately found not disabling, are very significant. The ALJ's findings of such severe limitations show that he took the relevant medical opinions into account in making the RFC findings.

The ALJ's decision to assign limited weight to certain medical opinions was based on cogent, stated reasons, and it was supported by substantial evidence.

### 1. Drs. Fogari and Hamada

The ALJ gave some weight, as opposed to great weight, to the opinions of Drs. Fogari and Hamada because their opinions were not supported by objective medical evidence. (R. 346)

As to Dr. Fogari's assessment, the ALJ noted that "Dr. Fogari's treatment notes are not specific, and do not mention any clinical findings or even subjective reports indicating physical limitations." (*Id.*; *see* R. 127–46, 255–58) Dr. Fogari found that Mahoney "would only be able to sit for 20 minutes, and stand for 10 minutes at a time"; would only be able to "sit and stand for less than two hours total in an eight-hour day"; "must walk around every 30 minutes for 10 minutes each time"; "would need to take unscheduled breaks"; "would need his legs elevated at 20 degrees 50 percent of the workday"; "could rarely lift 10 pounds"; could "rarely twist"; could "never stoop, crouch, or climb ladders or stairs"; "could only do fine manipulations 20 percent of the workday"; "should avoid even moderate exposure to environmental conditions like extreme temperatures, fumes, odors, dusts, gases, and other respiratory irritants"; and "would miss more than four days of work per month on average." (*Id.* 346 (citing R. 127–46, 255–58) As the ALJ noted, these findings were not medically specific and were not tied to clinical or subjective reports. Moreover, as discussed below, they are contradicted by Mahoney's own statements.

As to Dr. Hamada's findings, the ALJ determined that some of his conclusions were supported by MRI and EMG records, but that Dr. Hamada's records "do not warrant such extreme limitations." (*Id.*) Dr. Hamada stated that Mahoney "would only be able to walk for three blocks at a time"; "would only be able to sit and stand or walk for less

than two hours in an eight-hour day; needed to walk around during the workday; needed to shift positions at will and take unscheduled breaks every hour for ten minutes; does not need to elevate his legs; does not need to use a cane; could rarely lift less than ten pounds; could occasionally or rarely perform postural activities; was able to use his rights hand, fingers, and arm half of the time; was able to use his left hand, fingers, and arm ninety percent of the time; and would miss more than four days of work per month on average. (*Id.* (citing R. 217–54, 284–87)) The ALJ noted that certain records supported slight limitations, such as Dr. Hamada's finding that Mahoney had seventy percent of the full range of motion in his neck and that he had decreased sensation. (*Id.*) However, as the ALJ also explained, Dr. Hamada's stated conclusions are undercut by his prescription of only conservative treatments such as rest, analgesics, electric massage, and diathermy. (*Id.* 344, 346)

The ALJ also properly gave little weight to Dr. Hamada's conclusory opinion in 2004 that Mahoney was "disabled" after the bus accident. (*Id.* 244–45) In so doing, the ALJ correctly noted that the Commissioner of Social Security reserves the right to make a finding of disability, and that Dr. Hamada's definition of disabled may differ from the definition in the Social Security regulations. (*Id.*) As Social Security Ruling 96-5p states,

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

The ALJ found, with reason, that the opinions of Drs. Fogari and Hamada were contradicted by certain of Mahoney's own statements. For

11

instance, Mahoney stated in a July 16, 2004 disability appeal report that he had slower reflexes and experienced a "change in [his] eyesight," but was still "able to take care of [his] personal needs." (R. 346, 108–14) At the August 21, 2012 hearing, Mahoney testified that, during the relevant time period, he read, watched television, sometimes walked to the store and back, and was able to walk with a cane. (*Id.* 346, 1000, 1006, 1008) The ALJ noted that these activities required the use of Mahoney's eyes, and that Mahoney's ability to engage in these activities indicated that he was able to get around to some extent. (*Id.* 344, 346) The record thus indicated that Mahoney's limitations were not as severe as Drs. Fogari and Hamada found.

Again, I note that the ALJ largely accepted the medical opinions of Drs. Fogari and Hamada, as he found Mahoney was only capable of sedentary work with many limitations.

### 2. Dr. Hoffman

Dr. Hoffman examined Mahoney twice, on February 25, 2003 and December 24, 2007. (R. 370–71) Mahoney argues that the ALJ erred by (1) failing to completely analyze Dr. Hoffman's first report; and (2) not considering Dr. Hoffman's second report at all. (Pl. Br. 14) Mahoney attaches this second report as Exhibit A to his brief; it is not in the administrative record.

*Dr. Hoffman's first, 2003 report:*

Mahoney's claim that the ALJ did not properly analyze Dr. Hoffman's first report from 2003 cannot be sustained in light of the record. (Pl. Br. 19) The record shows that the ALJ took Dr. Hoffman's report into account in determining Mahoney's RFC. Specifically, the ALJ described Dr. Hoffman's findings that Mahoney "walked with a normal gait"; "had decreased pinprick and vibratory sensitivity of both lower extremities"; was able to straighten his legs normally; had "good dorsal

12

flexion and plantar flexion and intact muscle strength"; experienced "no deficit with walking on heels or toes"; "had a good sense of balance, with intact deep tendon reflexes; and "had the classic pattern of background peripheral retinopathy related to diabetes, but . . . still had 20/20 vision acuity in each eye." (R. 344) Mahoney points out that Dr. Hoffman also found Mahoney to be suffering from "complications of diabetes related to peripheral neuropathy including burning, numbness and pain in both legs," fluctuating vision, retinopathy within both eyes, and decreased sensitivity of lower extremities. (Pl. Br. 5–6) However, the ALJ largely accepted these findings, as he found diabetes, peripheral neuropathy, and retinopathy to be severe impairments at step two of his analysis, and he found that Mahoney only had the RFC to perform severely limited sedentary work at step four. (R. 342–43) Mahoney does not point to any specific errors in the ALJ's analysis of Dr. Hoffman's 2003 report, and I do not find any.

*Dr. Hoffman's second, 2007 report:*

Mahoney's second claim—that the ALJ failed to review Dr. Hoffman's second, 2007 report—is complicated by the fact that, as Mahoney concedes, that report is not part of the administrative record. (Pl. Br. 6, n. 3) For that omission, the SSA bears the initial responsibility, but Mahoney, too, is to blame for failing to resubmit the report when invited to do so. I conclude, in any event, that a remand, especially at this late date, is not appropriate, because the 2007 report is cumulative and would not have altered the result.

The Appeals Council's January 14, 2010 remand order notes that the record underlying the ALJ's decision (issued April 11, 2008) could not be located. (R. 386) However, it gave Mahoney ample opportunity to ensure that the record was properly reconstructed. The Appeals Council instructed the ALJ on remand to "[p]rovide the claimant the opportunity

13

to submit updated medical evidence in connection with reconstructing the missing claim file." (*Id.* 379)

The Appeals Council's July 5, 2012 remand order likewise explained that the original claim file was lost, and that certain evidence had been recovered. That 2012 remand order specifically noted that there was still "no medical evidence in the record between January 14, 2005 and May 5, 2008." (*Id.* 395) The July 5, 2012 order instructed the ALJ to "request resubmission of the evidence pertaining to the period between January 14, 2005 and May 5, 2008." (*Id.* 396)

Pursuant to the Appeals Council's July 5, 2012 order, Mahoney was invited to resubmit the missing medical evidence from the period January 14, 2005 through May 5, 2008. In the SSA's notice for the August 21, 2012 hearing, Mahoney was instructed that he could submit more evidence, either prior to or on the day of the hearing. (*Id.* 776) At the August 21, 2012 hearing, ALJ Miller clarified: He identified the exhibits that were to be part of the record and asked counsel whether he had identified them correctly. (*Id.* 994) Mahoney's counsel voiced no objections to ALJ Miller's description of the exhibits in the record. Finally, when Mahoney appealed ALJ Miller's October 4, 2012 decision, he was again given the opportunity to present "new and material evidence." (*Id.* 332)

At no time did Mahoney respond to any of these invitations by submitting Dr. Hoffman's 2007 report to the ALJ or the Appeals Council. Now, however, he attaches the report to his brief to this Court, and faults the ALJ for failing to review it. He does not deny that he had access to this report at all relevant times in the administrative proceedings. He does not state any justification for failing to have submitted it before.

"[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence."

14

*Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." *Id.* at 593. Mahoney had ample opportunity to present ALJ Miller or the Appeals Council with any additional evidence. He did not do so, and does not offer any good cause explanation for this failure.

Because this often-remanded matter has been beset by difficulties, in an abundance of caution I have reviewed Dr. Hoffman's 2007 report. I find that it is largely consistent with Dr. Hoffman's 2003 report, which the ALJ did review, and with the ALJ's opinion.

In his 2007 report, Dr. Hoffman reiterates Mahoney's diagnoses of diabetes mellitus, diabetic retinopathy, and peripheral neuropathy. (Pl. Br. Ex. A at 1) Dr. Hoffman also notes that although Mahoney has had occasional blurred vision, Mahoney did not have a recent eye examination (as of 2007) and only used reading glasses, as opposed to prescription eyeglasses. (*Id.*) Mahoney did not at that time take any medication to treat his peripheral neuropathy. (*Id.*) At Dr. Hoffman's 2007 physical examination, Mahoney presented as "a thin individual who [was] alert and oriented as to time, place and person and cooperative." (*Id.*) Mahoney "walk[ed] with a relatively normal gait not using an assistive device," was "able to get on and off the examining table without help," and could "arise from a supine position." (*Id.* 1–2). He was "lucid, relatively well versed in the details of his medical history and his ability to respond to questions in a logical manner appear[ed] to be intact." (*Id.* 2) Mahoney lived with his girlfriend at the time. (*Id.* 1)

Mahoney highlights Dr. Hoffman's findings that he (1) could not operate foot controls; (2) could only stand or walk for an hour at a time; and (3) could only sit for two hours at a time; (4) could occasionally

reach, feel, finger, push or pull; (5) could not climb stairs, ramps, ladders, or scaffolds, (6) could not balance; (6) could not read very small print; (7) could not be exposed to extreme cold or heat; (8) could not operate a motor vehicle; and (9) could not walk a block at a reasonable pace on rough or uneven surfaces." (Pl. Br. 7 (citing Ex. A 4–6))

These findings, however, are largely consistent with the ALJ's determination of Mahoney's residual functional capacity, in which the ALJ found the following limitations: sedentary work, "limited to unskilled and entry level work that is simple and routine; only occasional overhead reaching; frequent fine and gross manipulation; no operation of foot controls or foot pedals"; that Mahoney had to "avoid concentration exposure to fumes, dusts, odors, gases, poor ventilation, temperature extremes, and other respiratory irritants"; and that he was "limited to ambulation and walking with a cane." (R. 343) The ALJ's findings of limitations even exceeded those identified by Dr. Hoffman in at least one respect: the ALJ found that Mahoney could only walk with a cane, while Dr. Hoffman found that he could operate without one.

In short, there is no indication that Dr. Hoffman's 2007 report, even if it had been properly placed in the record, would have altered the ALJ's determination in any way.

### 3. Dr. Drice

Finally, Mahoney objects to the ALJ's reliance on the report of Dr. Drice, a state agency physician. (Pl. Br. 19–20) This argument is without merit, as the ALJ gave Dr. Drice's opinion reduced weight for the very reasons Mahoney objects to it. As the ALJ explained, he assigned only "some" weight to Dr. Drice's opinion because it was "quite old" (that is, from 2003) and did not "address any recent complaints or medical records." (R. 345) Mahoney objects that "Dr. Drice "clearly did not have complete medical records which were submitted after that date [*i.e.*, the

16

date of Drice's report]." (Pl. Br. 20) It appears, however, that the ALJ agreed, and gave the report limited weight as a result.

The ALJ did not err in his consideration of Dr. Drice's opinion.

### ii. The ALJ properly evaluated Mahoney's subjective complaints of pain and other symptoms (Plaintiff's Point D)

Next, Mahoney argues that the ALJ improperly rejected Mahoney's allegations regarding the nature, frequency, and duration of his pain in the relevant 2002-09 period. (Pl. Br. 22–26) Specifically, Mahoney cites objective medical evidence that he says supports his claims regarding his pain, such as "physical examination findings, EMG studies, and MRI findings" which showed cervical radiculopathy and severe polyneuropathy, and retinopathy. (*Id.* 25) I find that the ALJ gave specific reasons for his credibility findings, and that those reasons were supported by substantial evidence in the record.

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

At the August 21, 2012 hearing, Mahoney testified that, during the relevant period, he had numbness and pain in his feet, back problems,

17

swelling in his ankles at times, pain and nerve damage in his hands, neck problems, and blurry vision. He also testified that he could not stand for more than fifteen minutes without experiencing pain or sit for more than twenty-five minutes without difficulty. Finally, he testified that he lived with his mother, who did all of the chores. He said he spent his time reading and watching television. (R. 343–43, 995–1013)

Mahoney argues that the objective medical evidence supports his diagnoses of cervical radiculopathy, severe polyneuropathy, and retinopathy of both eyes. (Pl. Br. 25) Of course, the ALJ largely accepted these diagnoses; he found insulin dependent diabetes mellitus, mild sensory peripheral neuropathy, diabetic retinopathy, cervical spine disc bulge and protrusion with radiculopathy to be severe impairments at step two of his analysis. (R. 342) Mahoney's argument, to the extent it focuses on those diagnoses, rather than his functional capacity and the nature, frequency, and duration of his pain, is therefore somewhat beside the point.

Mahoney does argue that the ALJ improperly discredited his subjective reports of pain. At the August 21, 2012 hearing, Mahoney made the backward-looking statement that, during the relevant 2002-09 period, he could not stand for more than fifteen minutes at a time. However, as the ALJ noted, Mahoney's complaints were contradicted by other, more contemporaneous statements. For instance, Mahoney stated in his 2002 disability report that "he could not stand for more than *one hour* at a time, could not lift more than 20 pounds, and had difficulty bending." (R. 345 (citing R. 64–73) (emphasis added)) In 2004, Mahoney stated generally that his physical state had worsened, that he had slower reflexes, that he was more tired, and that his eyesight had deteriorated. (*Id.* (citing (R. 108–14)) Still, he confirmed in that statement that he was able "to take care of his personal needs." (*Id.* (citing R. 108–14)) In 2008, Mahoney stated that he was able to walk approximately two blocks and

18

climb two flights of stairs. (*Id.* 512)  The ALJ noted that Mahoney complained of limited vision, but reported that his daily activities included reading and watching television. (*Id.* 346) Taking all of these statements together, the ALJ found Mahoney's statements concerning the intensity, persistence and limiting effects of his symptoms not credible to the extent they differed from the RFC assessment. (*Id.* 344–45)

The ALJ's assessment of Mahoney's subjective complaints of pain and other symptoms is supported by substantial evidence.

### iii. *The ALJ's hypothetical question to the vocational expert was proper (Plaintiff's Point C)*

Mahoney argues that the ALJ's hypothetical question to the vocational expert failed to reflect all of Mahoney's alleged restrictions. (Pl. Br. 21–22) I find that the ALJ's hypothetical was proper, as it included all the limitations that the ALJ found to be supported by the record.

The Third Circuit has repeatedly emphasized that an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original); *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (quoting *Rutherford*). Rather, an ALJ need only include limitations "that are medically established," or "*credibly established limitations.*" *Rutherford*, 399 F.3d at 554 (emphasis in original); *Zirnsak*, 777 F.3d at 614. An ALJ may properly exclude a limitation from his hypothetical even though it "is supported by medical evidence," if it "is opposed by other evidence in the record." *Zirnsak*, 555 F.3d at 615.

The ALJ's hypothetical to the vocational expert contemplated an individual who was "capable of sedentary work, that is unskilled and entry level, simple and routine, with only occasional overhead reaching, frequent fine and gross manipulation[, d]oes not require operational foot controls or foot pedals[, a]nd avoids concentrated exposure to fumes,

19

dusts, odors, gases, poor ventilation, temperature extremes and other respiratory irritants." (R. 1015) This hypothetical individual could walk only with the use of a cane. (*Id.* 1020–21) The vocational expert found that such an individual would be capable of at least three jobs that exist in the national economy in significant numbers: a sorter, an order clerk, and an addresser. (*Id.* 1015–16, 1020–21)

Mahoney argues that the ALJ's hypothetical did not include the various restrictions found by Drs. Fogari and Hamada, as well as those found by Dr. Hoffman in his 2007 examination.

As I have already noted, Mahoney had numerous opportunities to submit Dr. Hoffman's 2007 examination report to the ALJ and did not do so. "[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

As explained in section II(e)(i)(1), *supra*, the ALJ's decision to assign only some weight to the medical opinions of Drs. Fogari and Hamada is supported by substantial evidence. The limitations in the ALJ's hypothetical mirror the limitations he found when assessing Mahoney's RFC—that is, all of the limitations that the ALJ found to be credible. (*Compare* R. 343 *with* R. 1015, 1020–21) Mahoney does not suggest otherwise. The ALJ is not required to include in his hypothetical any alleged limitations that he did not find credible. Therefore, I find no error in the hypothetical the ALJ posed to the vocational expert.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED.

Dated: June 26, 2015

KEVIN MCNULTY
United States District Judge